UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05 10981 RCL

CYNTHIA FOSS BOWMAN,
                Plaintiff,

v.

PATHOLOGY ASSOCIATES OF STURDY
MEMORIAL HOSPITAL, INC. and RICHARD A.
SMITH,
                Defendants.

**MEMORANDUM IN SUPPORT OF OPPOSITION OF CYNTHIA FOSS BOWMAN
TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY
PLAINTIFF AND FOR ATTORNEYS FEES AND COSTS**

**I.      Introduction**

      The record in this matter, set forth herein, reveals Defendants' motion to compel production of documents for what it is: a baseless and misguided filing with this Court, premised on a demonstrably false affidavit submitted by Defendants' counsel, which, when stripped of its vituperation, complains about an unspecified document which has either been produced or does not exist. In response to Defendants "scorched earth" discovery in this case, Plaintiff has been deposed, has produced over 660 heavily redacted documents, did not object to the depositions of her former local counsel and accountant, consented to Defendants' counsel interviewing Plaintiff's former local counsel and accountant, and did not object to discovery conducted by Defendants months after the expiration of the discovery deadline. Defendants' impertinent allegations of "discovery abuse" are thoroughly erroneous and premised, in part, on a

demonstrably false affidavit submitted by Defendants' counsel. Plaintiff respectfully requests that she be awarded her costs and fees in connection with this totally unnecessary motion. To do otherwise would achieve the very purpose of Defendants' filing the motion, namely, to attempt to grind down Plaintiff in what should be an exceedingly straightforward case in which Defendants seek to evade a clear contractual obligation to a prominent pathologist who formally worked for Defendants.

**II.     Background of Case**

In this action, Plaintiff, Cynthia Foss Bowman ("Bowman"), a pathologist, seeks to recover monetary damages arising out of the breach of a written employment contract executed by her former employers, Defendants Pathology Associates of Sturdy Memorial Hospital, Inc. ("PASM") and Richard A. Smith ("Smith") (collectively "Defendants"), wherein Defendants agreed, among other things, to fund a retirement account for Bowman's benefit and provide reimbursement for other work-related expenses. The written employment contract between Bowman and Defendants ("Contract") is dated April 9, 2002 and states, in part, that the "financial package" for Bowman's position included salary of "$200,000.00 per annum" and a "pension" as follows:

> "To maximum allowable to your current plan or a SEP set up for you. This is estimated to be a $40,000.00 per annum contribution."

The Contract further states that the "financial package" included a leased automobile, malpractice insurance, continuing education, book and dues allowance, a digital camera, health insurance and moving allowance. Defendants, by and through Richard A. Smith, executed the Contract on April 30, 2002 and Bowman executed the Contract on May 2, 2002. The Contract

memorialized a listing of the financial package included in Smith's offer of employment to Bowman written in Smith's own hand which states, in part, "pension contribution $40,000.00."[1]

In response to numerous demands by Bowman and her local counsel prior to the filing of the instant litigation for payment of the pension contribution and other unpaid benefits, Defendants ignored such demands. Following written demand by Bowman's local counsel, Richard N. Bryant ("Bryant"), dated April 20, 2004, Defendants' counsel, Tamsin Kaplan ("Kaplan"), responded by stating, among other things, that she saw no binding contract to provide pension contributions because the agreement was too vague to enforce. Kaplan said nothing to Bryant about the stream of allegations which have been the subject of Defendants' discovery in this case alleging essentially, as is set forth by Defendants in Memorandum of Law In Support of Defendants' Motion To Compel Production of Documents by Plaintiff And For Attorneys Fees And Costs, that "plaintiff was frequently severely tardy for work, when her services as a pathologist were needed and she was required to be on duty." Id. at 2.

Bowman left Defendants' employ in March 2004 to take a position as Vice-Chair, Laboratory Medicine, North Shore Long Island Jewish Health System where she reports to the Chair of Laboratory Medicine, Dr. Thomas Sodeman who also happens to be the current President of the College of American Pathologists. In addition, Bowman currently is the Chief of the Clinical Labs at Long Island Jewish Medical Center, one of the five largest health care systems in the United States.

In their Answer to Bowman's Complaint in this action, Defendants deny liability under the express written Contract or otherwise and have raised fifteen (15) affirmative defenses.

---

[1] In a bit of foreshadowing, Smith stated to Bowman in a March 27, 2002 e-mail regarding Bowman's request for a written contract following agreement on Smith's proposed terms of employment: "I don't use a contract because they aren't worth much."

3

### III. Summary of Discovery Proceedings

Bowman has taken nominal discovery in this straightforward action. Bowman served one set of twenty-six (26) document requests on Defendants on September 20, 2005. Defendants served a late response thereto dated November 3, 2005 objecting to every single one of the twenty-six (26) requests including, for example, a request for "all drafts of that certain correspondence dated April 9, 2002 (the Contract) from PASM to Bowman" on the grounds that the request was "vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." See Request No. 5. Defendants have, from time to time, produced documents pursuant to the document request, including, for example, producing documents as late as approximately four (4) weeks ago, March 2, 2006.

In addition, Bowman subpoenaed documents from Sturdy Memorial Hospital, Inc. ("Hospital") which, following a multi-paged objection to producing the documents requested by the Hospital's counsel, Choate Hall & Stewart, were produced in two (2) installments.

On the other hand, Defendants have sought to engage in a "scorched earth" discovery of Bowman. Defendants have interposed two (2) sets of document requests, deposed Bowman, noticed the depositions of and subpoenaed documents from Bowman's local counsel and accountant, subpoenaed documents from Sturdy Memorial Hospital, Inc., and repeatedly sought to manufacture discovery disputes where none existed.

In response to Defendants' discovery initiatives, Bowman has produced over 660 documents in a timely fashion, has been deposed, has consented to her local counsel and her accountant speaking directly with Defendants' counsel so, as Defendants' counsel has stated, she

could avoid traveling to Maine to take their depositions. Further, Bowman has not objected to Defendants conducting discovery following the expiration of the discovery deadline in this case.[2]

### IV. Argument

#### A. Defendants' Baseless Allegation of Discovery Abuse

Regrettably, because Defendants irresponsibly allege discovery abuse in this case, it is necessary to set forth the conduct of discovery in the case in some detail.

Approximately two months after filing their Answer to Bowman's Complaint, Defendants served their first request for production of documents on August 26, 2005. A timely response to that request was served by Bowman on September 28, 2005. By correspondence dated September 29, 2005, Defendants' counsel objected that while she received Bowman's response to Defendants' document request she did not receive the documents which were due on the same date. Defendants' counsel has uniformly misunderstood Rule 34 which requires a document response within thirty (30) days not the actual production of documents within thirty (30) days. After further objection by Defendants' counsel that the documents were not produced with the response, Bowman informed Defendants' counsel by correspondence dated October 20, 2005 that only the response to the document request was due on September 28, 2005 and, further, that Bowman's counsel was in the process of putting together documents to be produced pursuant to that response. Further, in that correspondence, Defendants' counsel was informed not to send a member of her staff to Bowman's counsel's office to inspect the documents as counsel threatened.[3]

---

2   Bowman certainly does not consent to any further discovery being conducted by Defendants.
3   In the meantime, at this time, i.e., late October, 2005, Defendants' response to Bowman's document request was not served and was late, without any request for extension of time.

On November 4, 2005, Bowman served over six hundred (600) documents on Defendants' counsel in response to Defendants' first request for production of documents. Those documents were heavily redacted due to privacy concerns of patients and attorney-client material. It is shear folly for Defendants' counsel to allege that the production of over 600 heavily redacted documents approximately thirty (30) days after Bowman's response to the document request was served is either untimely or was compelled by Defendants' counsel's serving of a copy of a motion to compel production of documents on November 3, 2005.[4]

Defendants' counsel further nitpicks about the rescheduling of Bowman's deposition. As Defendants' counsel knows, or should know, the ordinary custom for scheduling the deposition of a principal party is to request and discuss possible dates. Instead, Defendants, in the middle of August 2005, unilaterally selected a date on which to schedule Bowman's deposition. Defendants' counsel was informed several days prior to the deposition that Bowman, a very busy pathologist, would not be available on the date unilaterally selected by Defendants' counsel and Bowman's counsel offered three (3) alternative dates and sought to engage defense counsel in arriving at a mutually agreeable date. In response, Defendants' counsel sent correspondence dated September 29, 2005 objecting because Bowman only offered three (3) alternative dates for her deposition before the Phase One discovery deadline on November 11, 2005 stating that her "calendar is quite full and I am unavailable on those three days." In response to the scheduling snafu created by Defendants' counsel's unilaterally and arbitrarily picking a date and then stating that her calendar was "quite full", the parties agreed to extend the Phase One discovery deadline

---

4   In fact, most of the work reviewing and preparing documents to be produced took place in October, 2005. See Pisegna Aff. ¶8.

and filed a joint request to that effect.[5] Bowman's deposition was taken at Defendants' counsel's office in Belmont on Friday, December 2, 2005.

More troublesome in Defendants' attempt to create an issue over deposition scheduling is Defendants' counsel submitting a demonstrably false affidavit in support of that attempt. In the Kaplan Affidavit, Kaplan states that Bowman's counsel "did not request any extension of time to respond or request rescheduling of the Plaintiff's deposition" (¶6) and that Kaplan called Bowman's counsel on another matter in which call counsel informed Kaplan that Bowman was not available to be deposed on the date selected by Kaplan (¶7). In fact, an e-mail sent by Kaplan herself "confirms" that Bowman's counsel called Kaplan to reschedule the deposition! See Pisegna Aff. Exhibit B. Kaplan's e-mail and Bowman's counsel's e-mail of the same date also clearly show a call to Kaplan offering three (3) alternative dates for deposition.

On November 2, 2005, Defendants' counsel served a second request for production of documents to which a timely response was served on December 5, 2005. Four (4) days later, Defendants' counsel was demanding a discovery conference because she had not yet received any documents in response to the second request. In fact, a discovery conference was conducted on December 13, 2005, which conference was the subject of correspondence between counsel dated December 14, 2005 and December 23, 2005. In that conference, Bowman responded to each and every document requested by Defendants. In virtually every case, the document had already been produced to Defendants' counsel. In addition, Defendants' counsel was informed that further documents pursuant to her second document request would be duly forthcoming.

---

5    As was typical of discovery proceedings, Defendants' counsel refused to allow Bowman any opportunity to reserve her right to take responsive discovery necessitated by Defendants' discovery taken after the initial deadline.

In furtherance of her scorched earth policy, Defendants' counsel continued to pursue frivolous and fraudulent "disputes" over document production in her correspondence dated January 12, 2006. In Bowman's February 2, 2006 reply to that attempt, Defendants' counsel was again chastised for trying to manufacture a discovery dispute and informed that she already had most of the documents she was requesting including a handwritten note from her own client about health insurance and the other terms of the job proposal which were produced to Defendants' counsel in the very first initial discovery documents produced at the outset of the case.

With regard to the remaining bad faith allegations of discovery abuse, defense counsel alleges that she did not receive Bowman's initial disclosures which were sent to her by cover letter dated July 20, 2005, a copy of which is attached to Pisegna Aff. as Exhibit E. Defendants' counsel claims she did not receive those documents even though she concedes that she received the other documents referenced in the July 20, 2005 cover letter.

With regard to the Subpoena Duces Tecum served on Sturdy Memorial Hospital, Defendants' counsel was duly informed that a copy of the subpoena and documents produced pursuant to the subpoena were not immediately sent to defense counsel due to clerical error. Smith and PASM have worked for the Hospital for decades and the document request to the Hospital essentially sought documents regarding Defendants and their contractual dealings with the Hospital. Does defense counsel really think that Bowman's counsel was trying to obtain documents from the Hospital, which is represented by Choate, Hall & Stewart, without Defendants knowledge?

With regard to Bowman's deposition, Bowman directs the Court to the selected pages of the deposition transcript. With regard to Defendants fallacious claim that somehow something

improper happened at the deposition, incredibly, Defendants' counsel's second question in the deposition was "did you take any medications before coming here today, Dr. Bowman?" That is an extremely inappropriate and objectionable question and, as the transcript reveals, Bowman's counsel gently led Defendants' counsel to ask the proper question, namely, have you taken any medications that will affect your ability to understand my questions today. That question was answered without objection.

Based on the above record, Bowman respectfully requests an award of sanctions against Defendants and/or their counsel for suggesting, on this record, discovery abuse.

B.   <u>Document Request No. 12</u>.

When stripped of its baseless allegations of abuse, Defendants appear to seek an order compelling a different response to Defendants' Request No. 12 than that which has been provided. Quite simply, and as has been told to Defendants' counsel on numerous occasions, Bowman has produced all non-privileged documents in her possession or control responsive to Defendants' Request No. 12 pertaining to the above-captioned action. That production was made despite the hopelessly ambiguous and overbroad nature of Request No. 12 which seeks, for example "meeting notes" pertaining to anything whatsoever whether it has anything to do with this case from March 1, 2002 to the present. On its face, it seeks "tape recordings" of anything from March 1, 2002 through the present. Despite such ambiguity, Bowman has produced non-privileged documents in her possession or control relating to this action in response to the Request.

Defendants make much of their request for "calendars." Bowman has produced any and all non-privileged documents in response to Request No. 12 including any calendars, e.g.,

documents Bates-stamped 003 et seq. As defense counsel has been informed on numerous occasions there are no other documents responsive to document Request No. 12.

Furthermore, Document Request No. 12 is a fishing expedition of the first order. Defendants maintain that these suspected calendars "will shed light both on the terms of Plaintiff's alleged contract with PASM and on Plaintiff's job performance." That is nonsense. There is an express written contract in this case; how would a calendar have anything to do with the terms of that contract. Moreover, how would a calendar have anything to do with Plaintiff's job performance. There is no allegation that Bowman failed to show up for work when scheduled, only some vague allegation that she was "tardy" at times. As to the alleged "chronology" of events there was a regular exchange of e-mail correspondence which Defendants' counsel has been repeatedly told (including by extensive, detailed examination in Bowman's deposition) contains most of the chronology of events and communications. Defendants' counsel blatantly misrepresents Bowman's deposition transcript by representing that she testified that some calendar contained information concerning the terms and conditions of her employment; no such testimony exists either at the pages cited by Defendants' counsel or otherwise. It is similarly ridiculous to suggest that any calendar (which does not exist) would contain a reference as to when Bowman was given a copy of Defendants' contract with Sturdy Memorial Hospital or about the funding of her pension plan or about the requirements of her job or about allegedly "being told about her morning duties."

Therefore, Bowman has produced all non-privileged documents in her possession and control responsive to document Request No. 12 as it pertains to this case. No further response can be forthcoming.

WHEREFORE, Bowman respectfully requests that the Court deny Defendants' Motion To Compel Production of Documents and grant Bowman her costs and fees incurred in opposing said Motion.

                                              CYNTHIA FOSS BOWMAN,
                                              By her attorneys,

                                              Vincent J. Pisegna  BBO# 400560
                                              Aaron J. Mango  BBO# 660939
                                              KROKIDAS & BLUESTEIN LLP
                                              600 Atlantic Avenue
                                              Boston, MA  02210
                                              (617) 482-7211

DATED:     March 28, 2006

## CERTIFICATE OF SERVICE

I, Vincent J. Pisegna, hereby certify that on March 28, 2006, I caused to be served a true and accurate copy of the foregoing document, via first class mail, postage prepaid, upon Tamsin R. Kaplan, Esq., Tamsin R. Kaplan & Associates, P.C., 90 Concord Avenue, Belmont, MA 02478.

_____
Vincent J. Pisegna

2129\0001\161785.1