UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05 10981 RCL

CYNTHIA FOSS BOWMAN,

Plaintiff,

v.

PATHOLOGY ASSOCIATES OF STURDY
MEMORIAL HOSPITAL, INC. and RICHARD A.
SMITH,

Defendants.

**PLAINTIFF'S PROPOSED JOINT PRE-TRIAL MEMORANDUM**

In accordance with the Order For Final Pre-Trial Conference in the above-captioned

action dated February 28, 2006, Plaintiff, Cynthia Foss Bowman, submits this Proposed Joint

Pre-Trial Memorandum. In so doing, Plaintiff notes that a draft of the Proposed Joint Pre-Trial

Memorandum was submitted to defense counsel on May 19, 2006 for Defendants' comments and

submissions. Defendants have not responded to that draft, and instead filed a Motion for Status

Conference. In submitting this Proposed Joint Pre-Trial Memorandum, therefore, Plaintiff

reserves her right to make changes to any part or portions of this Pre-Trial Memorandum and/or

the attached Appendices in response to Defendant's submissions, which Plaintiff presumes

eventually will be forthcoming, or to respond to developments in the case.

A.    Trial Counsel.

Vincent J. Pisegna, Esq., Krokidas & Bluestein LLP, 600 Atlantic Avenue, Boston, MA

02210, tel: 617-482-7211 (Plaintiff's counsel).

Tamsin R. Kaplan, Esq., Tamsin R. Kaplan & Associates, P.C., 90 Concord Avenue Belmont, MA 02478, tel: 617-484-3210 (Defendants' counsel).

B.    Concise Summary Of The Positions Asserted By The Parties.

In this action, Plaintiff, Dr. Cynthia Foss Bowman ("Bowman"), currently Vice Chair, Laboratory Medicine, North Shore Long Island Jewish Health System and Chief of the Clinical Labs, Long Island Jewish Medical Center, seeks to recover damages arising out of the breach of a written employment contract between Bowman and Defendants dated April 9, 2002 ("Contract"). From July 2002 through March 2004, Bowman was employed by Defendants as an Associate Pathologist pursuant to the Contract which provides, among other things, that Defendants would pay to Bowman a salary of $200,000.00 per year and a "pension" as follows:

> "To maximum allowable to your current plan or a SEP set-up for you. This is estimated to be a $40,000.00 per annum contribution."

The Contract further states that the "financial package" for Bowman would include a leased automobile, malpractice insurance, continuing education, books and dues allowance, a digital camera, health insurance and moving allowance.

Bowman alleges in this case that Defendants have breached the Contract by failing and refusing to make the required annual $40,000.00 contribution to a SEP set up for Bowman. The sum of money to be paid to Bowman necessary to put her in the same position she would have been had Defendants made the pension contributions as required (the so-called "grossed-up" number) equals $157,791.00 as of June 30, 2005.

In addition, Defendants have further breached the contract as follows: (a) Bowman's final pay check from PASM did not pay Bowman for two (2) days worth of salary totaling $1,538.00, (b) Defendants failed and refused to reimburse Bowman for unpaid continuing medical education

2

and books and allowance dues in the sum of $3,254.11, (c) since Bowman elected not to obtain health insurance through PASM, Bowman was entitled to an end of year bonus of $10,000.00 per year.

In total, Bowman seeks in excess of $182,583.11 from Defendants.

In the Complaint, Bowman alleges claims against PASM sounding in breach of contract (Count I) and breach of the covenant of good faith and fair dealing (Count II). In addition, Bowman alleges claims against both Smith and PASM for fraudulent, negligent, and innocent misrepresentation (Counts III through V).

In response, Defendant alleges _____.

C.     Waived Claims Or Defenses.

(Plaintiff Does Not Intend To Waive Any Of Her Claims).

D.     Statement of Facts Established By The Pleadings Stipulation Of Counsel And Admissions.

The Complaint and Answer in the above-captioned action established the following facts:

1.     Defendant, PATHOLOGY ASSOCIATES OF STURDY MEMORIAL HOSPITAL, INC. ("PASM"), is a Massachusetts corporation with a principal place of business located at 211 Park Street, Attleboro, Massachusetts.

2.     Defendant, RICHARD A. SMITH ("Smith"), is an individual who, upon information and belief, resides at 11 Dutton Park, Walpole, Massachusetts.

3.     PASM is in the business of providing pathology services to Sturdy Memorial Hospital in Attleboro, Massachusetts. Smith is the President, Treasurer, and Director of PASM.

4.     On April 30, 2002, Smith, in his capacity as President of PASM, signed the Contract.

3

5.      Pursuant to the Contract, Bowman began working for PASM as an associate pathologist and given the title Associate Chief of the Department.

6.      Pursuant to the Contract, PASM was required to provide health insurance for Bowman, if Bowman so elected.

7.      PASM owed Bowman a duty to act in good faith and deal fairly under the Contract.

In addition, Plaintiff has proposed that the parties stipulate to the following further facts:

1.      In or about March, 2002, Smith began to aggressively recruit Bowman for the position of associate pathologist with PASM.

2.      On or about March 28, 2002, Smith and Bowman met, at which time Smith offered to Bowman employment as an associate pathologist with PASM on the following terms: base salary of $200,000 per year, $40,000 per year contribution to a pension plan, $4,000 per year in continuing medical education and dues, $4,800 per year for a car lease allowance, and health insurance, if needed, for a total annual package of $248,800.

3.      By correspondence dated April 9, 2002 ("Contract") from PASM to Bowman, PASM memorialized its offer of employment as an associate pathologist with PASM as follows:

- a base salary of $200,000 per year;
- the maximum allowable payment into Bowman's current pension plan or to set up a SEP for Bowman's benefit, estimated to be a $40,000 per year contribution;
- use of a BMW X5 3.0 automobile;
- full malpractice insurance coverage;
- up to $3,000 per year for continuing education expenses;
- up to $3,000 per year for book and dues expenses;
- a digital camera; and
- health insurance, if needed, otherwise an additional end-of-year bonus.

4.      In reliance upon the representations made by the Defendants during the meeting on or about March 28, 2002 and on the promises contained in the Contract itself, Bowman signed

4

the Contract on May 2, 2002, and relocated from Maine to Massachusetts, at considerable expense to Bowman.

5.      While employed by PASM, Bowman duly performed all of her contractual obligations pursuant to the Contract.

6.      Bowman's final paycheck from PASM is dated March 10, 2004, and covers the period ending on that date. Bowman was not paid two (2) days worth of salary, totaling $1,538.

7.      On numerous occasions during her term of employment, Bowman asked Smith about the status of the required $40,000 contribution to a SEP. In response, Smith ignored Bowman's requests.

8.      By correspondence dated July 2, 2003 from Bowman's attorney to Smith, Bowman requested documentation regarding the required $40,000 contribution to a SEP. In response, Smith ignored the request.

9.      Defendants failed to make the maximum allowable contribution to Bowman's plan or set up a SEP for Bowman's benefit for approximately two (2) years, resulting in a loss of $80,000 in tax-free retirement benefits to Bowman.

10.     The Contract explicitly states that PASM will reimburse Bowman up to $3,000 per year in continuing education and up to $3,000 per year for book and dues allowance.

11.     Upon leaving PASM, Bowman properly sought reimbursement for unpaid continuing education and book and dues allowances in the amount of $9,554.11. On March 9, 2004, PASM remitted a check to Bowman in the amount of $6,300, leaving a balance due and owing to Bowman of $3,254.11.

12.     In an e-mail dated March 27, 2002 from Smith to Bowman, Smith agreed that if Bowman elected not to receive health insurance from PASM, PASM would provide Bowman an

5

additional end-of-year bonus or discretionary spending funds. Smith represented to Bowman that her end-of-year bonus would be $10,000 per year.

13.    Throughout the course of her employment with PASM, Bowman did not elect health insurance coverage and did not receive any end-of-year bonuses as promised by Smith.

14.    Bowman should have received approximately $20,000 in end-of-year bonuses.

15.    In total, as a direct and proximate result of Defendants failure to comply with the terms of the Contract, Bowman has lost approximately $80,000 in tax-free retirement benefits plus $24,792.11 in unpaid salary, reimbursable expenses and bonuses, plus interest, costs, and attorneys' fees.

E.    Contested Issues Of Fact.


F.    Jurisdictional Questions.

None.

G.    Questions Raised By Pending Motions.

None.

H.    Issues of Law.

None.

I.    Requested Amendments To The Pleadings.

None.

J.    Additional Matter.

None.

K.    Probable Length Of Trial.

Plaintiff estimates that the presentation of her case-in-chief will take one day.

L.    Witnesses.

Plaintiff's witnesses:

1.  Cynthia Foss Bowman (fact witness), 35 Elm Rock Road, Bronxville, New York.

2.  Richard N. Bryant, Esq. (fact witness), Van Meer & Belanger, 20 York Street, Portland, Maine.

3.  Richard A. Smith (fact witness), 11 Dutton Park, Walpole, Massachusetts.

4.  Jack Toomey (fact witness), John T. Toomey Associates, Inc., 175 Derby Street, Hingham, Massachusetts.

5.  Scott A. Small (expert witness), CPA, Macdonald, Page, Schatz, Fletcher, LLC, 31 Long Creek Drive, South Portland, Maine.

6.  Keeper of the Records, Sturdy Memorial Hospital, 211 Park Street, Attleborough, Massachusetts.

7.  Joseph Figueiredo (fact witness), 161 Park Avenue, Cranston, Rhode Island.

8.  Lucia Jean Charles (fact witness), 41 Foundry St., Apt. 233, South Easton, MA 02375.

9.  Dr. Barbara Stricker (fact witness), OB-GYN Group of Attleboro, 687 North Main Street, Attleboro, Massachusetts.

Plaintiff reserves the right to designate additional witnesses in response to any witnesses designated by the Defendants.

Defendants' Witnesses:

M.    List Of Proposed Exhibits.

See attached Exhibit A.  In addition, Plaintiff reserves the right to designate additional exhibits in response to any exhibits designated by the Defendants.

7

N.     Jury Instructions.

See attached Appendix B. In addition, Plaintiff reserves the right to amend jury

instructions in response to any jury instructions submitted by the Defendants.

O.     Voir Dire Examination Questions And Special Verdict Form.

None.


                                    CYNTHIA FOSS BOWMAN,
                                    By her attorneys,


                                    /s/ Vincent Pisegna
                                    _____
                                    Vincent J. Pisegna  BBO# 400560
                                    Allison Huppé BBO# 648274
                                    KROKIDAS & BLUESTEIN LLP
                                    600 Atlantic Avenue
                                    Boston, MA  02210
                                    (617) 482-7211

DATED:  June 8, 2006



2129\0001\162614.1

## CERTIFICATE OF SERVICE

I, Vincent J. Pisegna, hereby certify that on June 8, 2006, I caused to be served a true and accurate copy of the foregoing document, via first class mail, postage prepaid, upon Tamsin R. Kaplan, Esq., Tamsin R. Kaplan & Associates, P.C., 90 Concord Avenue, Belmont, MA  02478.

/s/ Vincent Pisegna
_____
Vincent J. Pisegna

2129\0001\162614.1

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05 10981 RCL

CYNTHIA FOSS BOWMAN,

                              Plaintiff,

v.

PATHOLOGY ASSOCIATES OF STURDY
MEMORIAL HOSPITAL, INC. and RICHARD A.
SMITH,

                              Defendants.

**APPENDIX A**
**PLAINTIFF'S LIST OF DOCUMENTS**

1.      Handwritten notes.

2.      E-mail dated March 4, 2002 to Bowman from Holiday Inn Hotel.

3.      E-mail dated March 4, 2002 to Bowman from RASMD.

4.      E-mail dated March 9, 2002 to Bowman from Richard Smith.

5.      E-mail dated March 11, 2002 to Bowman from Richard Smith.

6.      E-mail dated March 11, 2002 to Bowman from Richard Smith.

7.      E-mail dated March 12, 2002 to Bowman from Richard Smith.

8.      E-mail dated March 18, 2002 to Bowman from Richard Smith.

9.      E-mail dated March 18, 2002 to Bowman from Richard Smith.

10.     E-mail dated March 18, 2002 to Bowman from Richard Smith.

11.     E-mail dated March 25, 2002 from Bowman to Richard Smith.

12.     E-mail dated March 25, 2002 to Richard Smith from Bowman.

13.    E-mail dated March 27, 2002 to Bowman from Richard Smith.

14.    E-mail dated March 28, 2002 to Richard Smith from Bowman.

15.    Correspondence dated April 9, 2002 to Bowman from Richard Smith.

16.    Correspondence dated July 2, 2003 to Richard Smith from Richard N. Bryant.

17.    Correspondence (undated) to Richard N. Bryant from Richard Smith.

18.    401(K) Take Home Pay Illustration.

19.    Correspondence dated February 27, 2004 to Richard Smith from Cynthia Foss Bowman.

20.    Correspondence dated April 20, 2004 to Richard Smith from Richard N. Bryant.

21.    Memorandum dated March 27, 2004 to Richard N. Bryant from Bowman.

22.    Correspondence dated May 25, 2004 to Kaplan from Richard N. Bryant.

23.    Hospital Contract For Pathology Services.

24.    Correspondence to extend the Independent Contractor Agreement signed by Richard Smith and Sturdy Memorial hospital on November 20, 2000.

25.    Correspondence to extend the Independent Contractor Agreement signed by Richard Smith on October 23, 2003 and Sturdy Memorial Hospital on October 22, 2003.

26.    Amendment To Hospital Contract For Pathology Services dated September 2002.

27.    Job Description For Pathologist Assistant.

28.    2004 Practice Characteristics Survey Report.

29.    All documents from Sturdy Memorial Hospital.

30.    Enrollment Confirmation/Receipt to Cynthia F. Bowman, MD for June 2-3, 2003 Harvard Medical School Course on *Breast Pathology: Current Concepts and Controversies*.

31.    Meal and Parking Receipts dated June 2-3, 2003 of Cynthia Bowman for attendance at Harvard Medical School Course on *Breast Pathology: Current Concepts and Controversies*.

32. Reservation of Cynthia Bowman, MD for Harvard Medical School Conference on *Current Topics in Breast Pathology* held on November 12, 2003.

33. Registration Form and Confirmation to Cynthia Foss Bowman for 2003 Pathologists' Meeting.

34. Rental Car, Meal, Parking and Toll Receipts dated August 10-14, 2003 of Cynthia Foss Bowman for Attendance at 2003 Pathologists' Meeting.

35. E-mail Confirmation of United Airlines Reservations with Ticket Stubs for Flights to and from Boston/Los Angeles/San Diego on September 10 & 14, 2003 for CFBOWMAN@AOL.COM.

36. Correspondence dated October 1, 2003 to Cynthia Foss Bowman from College of American Pathologists re confirmation of deposit for The 2004 Pathologists' Meeting.

37. 2003 Membership Dues Invoice #90386816 from College of American Pathologists to Cynthia Foss Bowman MD.

38. 2004 Membership Dues Invoice from College of American Pathologists to Cynthia Foss Bowman.

39. 2003 Application for Membership to Massachusetts Society of Pathologists, Inc. by Cynthia Foss.

40. 2004 Membership Renewal Notice to Cynthia Foss Bowman from Massachusetts Society of Pathologists.

41. E-mail dated June 30, 2003 to Cynthia Foss Bowman from ASC re automatic membership renewal.

42. 2003 Membership Dues Invoice dated December 5, 2002 to Cynthia F. Bowman from American Association for Clinical Chemistry.

43. 2004 Membership Dues (and Subscription to *Clinical Chemistry Journal*) Invoice dated November 24, 2003 to Cynthia F. Bowman from American Association for Clinical Chemistry.

44. 2003 Membership Application from American Society for Microbiology.

45. 2004 Membership Renewal (and Subscription to *Clinical Microbiology Reviews* and *Journal of Clinical Microbiology*) Invoice dated December 31, 2003 to Dr. Cynthia F. Bowman from American Society for Microbiology.

3

46.   2004 Annual Dues Notice to Cynthia F. Bowman, M.D. dated December 31, 2003 from United States and Canadian Academy of Pathology, Inc.

47.   2003 American Society for Clinical Pathology Membership Renewal Notice (and Subscription to *Pathology Patterns Review*) to Cynthia L. Bowman, MD.

48.   2004 American Society for Clinical Pathology Membership Renewal Notice (and Subscription to *Pathology Patterns Review*) to Cynthia L. Bowman, MD.

49.   Subscription Renewal Notice of *Human Pathology* to Cynthia F. Bowman, MD, and Invoice #61284683 dated January 27, 2003.

50.   Subscription Renewal Notice of *Human Pathology* to Cynthia Foss Bowman dated December 31, 2003.

51.   Invoice #6406987 to Cynthia L. Foss-Bowman MD dated November 20, 2002 for Subscription Renewal of *Cancer*.

52.   Subscription Renewal Notice to Cynthia Foss Bowman dated October 18, 2003 for *Cancer*.

53.   Subscription Renewal Notice to Cynthia Foss Bowman dated December 9, 2002 for *Morbidity and Mortality Weekly Report*.

54.   Subscription Renewal Notice to Cynthia Foss Bowman dated October 14, 2003 for *MMWR*.

55.   2003 Subscription Renewal Notice to Dr. Cynthia Foss Bowman for *Histopathology*.

56.   2004 Subscription Renewal Notice to Cynthia Foss Bowman for *Histopathology*.

57.   Subscription correspondence to Cynthia L. Bowman MD for *The American Journal of Surgical Pathology*.

58.   Subscription Renewal Form to Cynthia L. Bowman dated August 4, 2003 for *The American Journal of Surgical Pathology*.

59.   Credit Card Receipt for Purchase of Publications:  *Clinical Lab Medicine 2E, Flow Cytrometric Txt/Atlas 2E*, and *Disorders Thrombos & Hemost 3E*.

60.   Invoice/Packing Slip dated July 6, 2003 to Cynthia F. Bowman MD for Publications:  *Clinical Lab Medicine 2E, Flow Cytrometric Txt/Atlas 2E*, and *Disorders Thrombos & Hemost 3E*.

4

61. Credit Card Receipt dated July 2, 2002 for Publications: *Blaustein's Pathology of 5/E*, *AJCC Cancer Staging Manual 6/E*, and *Fetal & Neonatal Pathology 3ED*.

62. Invoice #3749899 dated July 26, 2002 to Cynthia F. Bowman MD for Publications: *Blaustein's Pathology of 5/E*, *AJCC Cancer Staging Manual 6/E*, and *Fetal & Neonatal Pathology 3ED*.

63. Invoice #48279460 dated July 24, 2002 and Packing List to Cynthia Bowman for *SRGCL Path Nervous Sysm/Coverings 4/E* and backordered *Skin Pathology, 2E* and *Diagnostic Immunohistochemistry*

64. Invoice #48573930 dated August 9, 2002 and Packing List to Cynthia Bowman for *Skin Pathology, 2E*.

65. Invoice #48529548 dated August 9, 2002 and Packing List to Cynthia Bowman for *Diagnostic Immunohistochemistry*.

66. Correspondence from AFIP Atlas Subscriber Program (AAS) to Non-Tumor Atlas Subscriber for Subscription to Volume 2 of the Non-Tumor Atlas, "*Non-neoplastic Disorders of the Lower Respiratory Tract*".


CYNTHIA FOSS BOWMAN,
By her attorneys,


/s/ Vincent Pisegna

Vincent J. Pisegna  BBO# 400560
Allison Huppé BBO#  648274
KROKIDAS & BLUESTEIN LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 482-7211

DATED:  June 8, 2006


2129\0001\162660.1


5

## CERTIFICATE OF SERVICE

I, Vincent J. Pisegna, hereby certify that on June 8, 2006, I caused to be served a true and accurate copy of the foregoing document, via first class mail, postage prepaid, upon Tamsin R. Kaplan, Esq., Tamsin R. Kaplan & Associates, P.C., 90 Concord Avenue, Belmont, MA 02478.


/s/ Vincent Pisegna
_____
Vincent J. Pisegna


2129\0001\162660.1

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05 10981 RCL

CYNTHIA FOSS BOWMAN,

Plaintiff,

v.

PATHOLOGY ASSOCIATES OF STURDY
MEMORIAL HOSPITAL, INC. and RICHARD A.
SMITH,

Defendants.

## APPENDIX B
## PLAINTIFF'S JURY INSTRUCTIONS

**PLAINTIFF'S JURY INSTRUCTION NO. 1**

Now that you have heard the evidence and the arguments, it becomes my duty to give

you the instructions of the Court as to the law applicable to this case.  You are to consider these

instructions as a whole.

It is your duty as jurors to follow the law as stated in the instructions by the Court, and to

apply the rule of law so given to the facts as you find them from the evidence in the case.

You are not to be concerned with the wisdom of any rule of law stated by the Court.

Regardless of any opinion you may have as to what the law ought to be, it would be a violation

of your sworn duty to base a verdict upon any other view of the law than that given in the

instructions of the Court; just as it would be a violation of your sworn duty to base a verdict upon

anything but the evidence in the case.

- 1 -

You, the jury, are the sole judges of the facts. It is up to you to find out what happened in the case and apply the law which I give you to the facts you find. In reaching your verdict, you may only consider the testimony and exhibits which have been introduced into evidence in this case.

Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions §71.01 (4th ed. 1987) (modified).

**PLAINTIFF'S JURY INSTRUCTION NO. 2**

In considering the evidence, you should take into account the testimony of the witnesses, the stipulations agreed to among the parties, the exhibits received in evidence by the Court, direct and circumstantial evidence and reasonable inferences which you may draw from the evidence.

There are two kinds of evidence. One is direct evidence, such as that of an eyewitness. The other is circumstantial, that is, where one fact points or leads to another. For example, if a person enters this courtroom wearing a wet coat and shoes, that is circumstantial evidence that it is raining outside. Other explanations may exist, but rain is a reasonable one.

Leonard B. Sand et al., Modern Federal Jury Instructions, Inst. 74-2 at 74-6 (1984).

**PLAINTIFF'S JURY INSTRUCTION NO. 3**

Statements and arguments of counsel are not evidence in the case. When, however, the attorneys on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as proven.

The Court may take judicial notice of certain facts or events. When the Court declares it will take judicial notice of some fact or event, the jury must, unless otherwise instructed, accept the Court's declaration as evidence, and regard as proven the fact or event which has been

- 2 -

judicially noticed.

Unless you are otherwise instructed, the evidence in this case consists of the sworn testimony of witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been judicially noticed.

Any evidence is admitted for a limited purpose only. When the Court instructs that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

Your are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the bald statements of the witnesses. In other words, you are not limited solely to what you saw and heard as the witnesses testified. You are permitted to draw, from the facts which you find have been proven, such reasonable inferences as you feel are justified in the light of your experience.

Devitt, et al., Federal Jury Practice and Instructions, §§ 71.08, 71.09).

**PLAINTIFF'S JURY INSTRUCTION NO. 4**

You, as jurors are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies or by the character of the testimony given, or by evidence to the contrary of the testimony given. You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. In appraising the credibility of every witness in this case, you are entitled to consider the interest, or lack of interest of the particular witness in the outcome of this litigation.

- 3 -

Consider each witness's motive, state of mind, and demeanor or manner while on the stand. If you find that a witness is a friend in this case, or if a witness is biased toward a party in this case, then you may consider that in deciding how believable the witness is. Consider the witness' ability to observe the matters on which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making you own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves. You may, in short, accept or reject the testimony of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

- 4 -

Devitt, et al., <u>Federal Jury Practice and Instructions</u>, § 73.01; <u>Olson v. Ela</u>, 8 Mass. App. Ct. 165 (1979); Liacos, <u>Handbook of Massachusetts Evidence</u>, (1981) 144.

## PLAINTIFF'S JURY INSTRUCTION NO. 5

In a civil action such as this, the burden is on the party asserting a claim to prove every essential element of that claim by a "preponderance of the evidence." A "preponderance of the evidence" means such evidence as, when considered and compared to that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more probably true than false. In other words, to establish a claim by a "preponderance of the evidence," the party asserting the claim must prove that it is more probably so than not so.

A "preponderance of the evidence" does not mean that you should count the number of witnesses or documents. Rather, a "preponderance of the evidence" refers to the quality of all of the evidence which you accept as credible or true.

By a fair preponderance of the evidence, it is meant that if you hesitate or are doubtful as to whether your verdict should be in favor of the Plaintiff, then the Plaintiff has failed to satisfy you by a fair preponderance of the evidence that its contentions are true, and you must therefore find in favor of the Defendants.

Liacos, <u>Handbook of Massachusetts Evidence</u>, (5th ed. 1981), p. 38.

## PLAINTIFF'S JURY INSTRUCTION NO. 6

A contract is a promise, or set of promises, between two or more persons to do or not do a certain thing.

Brady, et al., <u>Massachusetts Superior Court Civil Jury Instructions</u>, §14.1

## PLAINTIFF'S JURY INSTRUCTION NO. 7

A contract in writing voluntarily executed with full knowledge of its contents must be

enforced.

If you find that the parties entered into a written contract, then the parties will be bound by the precise terms of that written contract.

Colonial Development Corp. v. Bragden, 219 Mass. 170 (1914); John G. Miller Co. v. George Fichera Constr. Corp., 7 Mass. App. Ct. 494 (1979)

## PLAINTIFF'S JURY INSTRUCTION NO. 8

In general, an action for breach of contract protects a party's interest in having a promise performed. You must find the Defendants liable to the Plaintiff for breach of contract if the Plaintiff has proved: (1) an agreement, whether express or implied, in writing or orally, exists between the Plaintiff and the Defendants; (2) for valid consideration; (3) performance or its equivalent under the agreement by the Plaintiff; (4) material breach of the agreement by the Defendants; and (5) damages to the Plaintiff. "Consideration" consists of the inducement for a person to enter into a contract. A "breach of contract" is a party's failure to perform in accordance with the terms of the contract where the failure is without a justifiable excuse. The failure to make payments under a contract constitutes a breach of the contract.

Redgrave v. Boston Symphony Orchestra, Inc., 557 F. Supp. 230, 237 (D. Mass. 1983); Loranger Construction Corp. v. E. F. Hauserman Co., 1 Mass. App. Ct. 801 (1973) ); Singarella v. Boston, 342 Mass. 385, 387 (1961); Realty Developing Co., Inc. v. Wakefield Ready-Mixed Concrete Co., Inc., 327 Mass. 535, 537 (1951); 17 R. Bishop, Massachusetts Practice, § 16 (2nd ed. 1970). Louise Caroline Nursing Home v. Dix Construction Corp., 362 Mass. 306, 309-311 (1972); Walsh v. Conwell 272 Mass. 555 (1930); Petowsky v. Black, 213 Mass. 428 (1913) .

## PLAINTIFF'S JURY INSTRUCTION NO. 9

If you find that a contract existed between the parties, the Plaintiff must also prove that the Defendants failed to perform their obligations under their agreement. Failure to perform by the Defendants is a breach of the contract for which the Defendants are liable in damages. If you

find that the Defendants breached their contractual obligations to the Plaintiff, then you may

award damages to the Plaintiff.  The measure of such an award is the amount necessary to put the

Plaintiff in exactly the position she would have been in had the Defendants performed their

obligations under the contract.

Realty Developing Co. v. Wakefield  Ready-Mixed Concrete Co., 327 Mass. 535, 100 N.E. 2d
28  (1951) ;  Associated Perfumers, Inc. v.  Andelman, 316  Mass. 175 (1944); 17 Bishop,
Massachusetts Practice, § 30 at p. 47

## PLAINTIFF'S JURY INSTRUCTION NO. 10

If the terms of the written contract are plain and free of ambiguity, then you must

construe the contract according to the ordinary and usual sense of the contract's terms.

Edwin R.  Sage Co.  v.  Foley , 12 Mass.  App.  Ct. 20 (1981); Freelander  v.  G & K Realty
Corp.,  357 Mass. 512 (1970).

## PLAINTIFF'S JURY INSTRUCTION NO. 11

In construing the terms of the written contracts, you are to construe the contract as a

whole and give force and effect to every word so far as is practicable.

Crimmins & Pierce Co.  v.  Peabody Kidder Acceptance Corp., 282 Mass. 367 (1933) .


## PLAINTIFF'S JURY INSTRUCTION NO. 12

Oral testimony may also be considered to clarify the meaning of ambiguous terms in

written contracts.  Whether a particular term is ambiguous is a matter of law for the court.  You

may consider oral testimony in deciding what meaning the parties intended to give the

ambiguous terms.

Katz v. Belko, 16  Mass.  App. Ct. 178, 181, 450 N.E. 2d 630, 632 (1983); Petricca Construction
Co.  v.  Commonwealth, 13 Mass.  App.  Ct.  981, 432 N.E. 2d 545 (1982); 19 Hughes,
Massachusetts Practice, Evidence § 425, n. 30.

7

**PLAINTIFF'S JURY INSTRUCTION NO. 13**

A required element of the claim of breach of contract is that there be a "material breach" of the agreement.  The Plaintiff claims that the Defendants materially breached their agreement by: (a) failing and refusing to make the required annual $40,000.00 contribution to a SEP pension set up for the Plaintiff; (a) failing to pay Plaintiff for two (2) days worth of salary; (c) failing to reimburse Plaintiff for unpaid continuing medical education and books and allowance dues;  and (d) failing to pay Plaintiff an end-of-year bonus of $10,000 per year since Plaintiff elected not to obtain health insurance through Defendants.

A breach of contract is material if it relates to the very substance or root of the agreement and not merely to a subordinate or incidental matter.  You must find that the Defendants committed a "material breach" of the contract if their conduct violated a fundamental purpose of the contract or defeated the objective of the parties in making the agreement.  You may find that the Defendantss materially breached their contract with the Plaintiff if they failed to do any of the things that Plaintiff alleges that they were obligated to do under the contract.

Finally, you may find a material breach of contract arising from some other action taken by the Defendantss which violated the very substance or root of the agreement.

Truglia v.  KFC Corp., 692 F. Supp. 271, 276-77 (S.D.N.Y.  1988), affirmed 875  F. 2d  308 (1989);  Ward v. American Mutual Liability Ins. Co., 15 Mass. App. Ct. 98, 100 (1983); Aerostatic Engineering Corp. v.  Szczawinski, 1 Mass. App. Ct. 141, 144-45 (1973).

**PLAINTIFF'S JURY INSTRUCTION NO. 14**

If you find in favor of the Plaintiff against the Defendants for breach of contract, then you may award damages to the Plaintiff.  In a case such as this one, the Defendants are liable for whatever damages follow as the natural and probable result of the Defendants' conduct, or which may reasonably be presumed to have been contemplated by the parties as the probable result of a

breach of the contract at the time the contract was made.

White Spot Constr. Corp.  v.  Jet Spray Cooler, Inc., 344 Mass. 632, 183 N.E. 2d 719  (1962);
Leavitt v.  Fiberloid Co., 196 Mass. 440, 82 N.E. 682 (1970).

**PLAINTIFF'S JURY INSTRUCTION NO. 15**

The fact that I charge you on the measurement of damages is not, and should not be

considered by you, as any indication that I think damages should be awarded.  I give you these

instructions on damages solely because I am required to charge you on all phases of the case that

you might have to consider.  If the Plaintiff has not proven that the Defendants breached the

contract, then you will not consider the issue of damages.

If the Defendants did breach the contract, you must then decide the amount of the

Plaintiff's damages, if any.  The basic principle of contract damages is that the injured party

should be put in as good a position as if the other party had fully performed its obligations under

the contract.  The Plaintiff is entitled to recover damages sufficient to give her the benefit of her

contractual bargain, as long as such damages are reasonably proved.  In other words, the Plaintiff

is entitled to those damages that would put her in a position to obtain that which the Plaintiff has

bargained to obtain, so far as compensation in money can be computed by rational methods upon

a firm basis in fact.

Brady, et al., Massachusetts Superior Court Jury Instructions, §§14.3.1; Lease-It, Inc. v.
Massachusetts Port Auth., 33 Mass.App.Ct. 391, 397 (1992); Fernandes v. Union Bookbinding
Co., 400 Mass. 27, 37-38 (1987); Sackett v. St. Mary's Church Soc'y, 18 Mass.App.Ct. 186
(1984); John Hetherington & Sons, Ltd. v. William Firth Co., 210 Mass.8 (1911); Productora E.
Importadora De Papel v. Fleming, 376 Mass. 826, 837-38 (1978); White Spot Constr. Co. v.
Jestspray Cooler, Inc., 344 Mass. 632, 635 (1962).

**PLAINTIFF'S JURY INSTRUCTION NO. 16**

The law requires the you calculate damages within a reasonable degree of certainty, not

an absolute degree of certainty.  However, the damages you award should not be speculative.

9

You should arrive at a figure within a reasonable range, a figure supported by the evidence and by inferences drawn from the evidence.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §14.3(i); Knightsbridge Marketing v. Promociones Y Proyectos, 728 F.2d 572, 575 (lst Cir. 1984); In Re Ward, 194 B.R.703, 712 (D. Mass. 1996); Salamon v. Terra, 394 Mass. 857 (1985); W.A. Snow Iron Works v. Chadwick, 227 Mass. 382 (1917); Cay v. Canton, 119 Mass. 513 (1876).

**PLAINTIFF'S JURY INSTRUCTION NO. 17**

Implied in every contract is what is called a covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Under the covenant of good faith and fair dealing, the Defendants, as parties to the contract, are obligated to deal with the Plaintiff honestly and in good faith with respect to their performance of the contract. If you find that the Defendants failed to deal honestly and fairly with the Plaintiff in the performance of the contract between them you must find that Defendants violated the covenant of good faith and fair dealing and that Plaintiff is entitled to breach of contract damages.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §14.1.12; Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471-74 (1991); Hawthorne's, Inc. v. Warrenton Realty, 414 Mass. 200, 211 (1993).

**PLAINTIFF'S JURY INSTRUCTION NO. 18**

You may also find that Defendants violated the covenant of good faith and fair dealing if you find that Defendants breached their contract with Plaintiff or made fraudulent misrepresentations to Plaintiff in their dealings.

Massachusetts Employers Insurance Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995; Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471-72 (1991).

**PLAINTIFF'S JURY INSTRUCTION NO. 19**

The Plaintiff claims that the Defendants misrepresented, or made false statements to her:
(a) on or about March 28, 2002 and in the contract, in representing that they intended to make the
maximum allowable contribution to Plaintiff's pension plan or set up a SEP for Plaintiff's
benefit, when, in fact, they intended never to create or fund a SEP; and (b) by representing to
Plaintiff that if she elected to forgo health insurance coverage, she would receive additional
compensation in the form of an end-of-year bonus, when, in fact, they intended never to pay such
bonus. As a result of these misrepresentations of fact, Plaintiff entered into the contract,
relocated from Maine to Massachusetts, did not personally fund any type of SEP while employed
by Defendants, elected not to be covered under Defendants' health insurance policy, and used
her own funds to pay for work-related expenses; all of which proximately resulted in loss and
injury to Plaintiff. Plaintiff asserts she would not have done these things if she had known the
true state of affairs.

The Plaintiff may recover money damages from the Defendant if she proves the
following by a fair preponderance of the credible evidence:

1.    that the Defendants made a false statements to the Plaintiff, and those statements
concerned facts that a reasonable person would consider important to the decisions that
the Plaintiff made;

2.    that when the Defendants made the statements, the Defendants either knew that
the statements were false, or recklessly made the statements by willfully disregarding
their truth or falsity;

3.    that the Defendants made the false statements with the intention that the Plaintiff
would rely on those statements in making her decisions;

4.    that in making the Plaintiff's decisions, the Plaintiff did in fact rely on the
Defendants' statements as true, and that her reliance was reasonable under the
circumstances; and

11

5.    that the Plaintiff suffered some financial loss as a result of relying on the Defendant's false statements.

If the Plaintiff has proved these five things by a preponderance of the credible evidence, your

verdict will be for the Plaintiff, and you must then go on to determine the amount of money

damages to be awarded to the Plaintiff.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §20.1; Restatement (second) of Torts, § 525 (1977).

## PLAINTIFF'S JURY INSTRUCTION NO. 20

The Defendants can be held responsible for an intentional or reckless misrepresentation

about an existing fact.  Therefore, if you find that Defendants made any representations to

Plaintiff that Defendants knew or should have known were untrue at the time when they were

made, you must find that those statements were fraudulent misrepresentations.

Kannavos v. Annino, 356 Mass. 42, 50 (1969); Snyder v. Sperry & Hutchinson Company, 368 Mass. 433, 444 (1975); Cambridge Plating Company, Inc. v. Napco, Inc., 85 F.3d 752, 767, n. 16 (lst Cir. 1996).

## PLAINTIFF'S JURY INSTRUCTION NO. 21

A misrepresentation is "material" if the Plaintiff can prove that the misrepresentation was

one of the principal reasons she entered into the contract and that but for the Defendants'

misrepresentation, she would not have entered into the contract.

Shaw's Supermarkets, Inc. v. Delgiacco, 410 Mass. 840 (1991); Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §14.2.2.

## PLAINTIFF'S JURY INSTRUCTION NO. 22

Plaintiff may recover if her reliance on the Defendants' statements was reasonable under

the circumstances.  The Plaintiff was not required to investigate the truth of assertions that were

made to her.  The recipient of a fraudulent misrepresentation of fact is justified in relying on its

12

truth, although she might have ascertained the falsity of the representation had it made an investigation.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §20.1.6; Yorke v. Taylor, 332 Mass. 368, 372-73 (1955).

## PLAINTIFF'S JURY INSTRUCTION NO. 23

To recover for fraudulent representation, Plaintiff must show that Defendants had the intent at the time they made a promise not to honor their promise. However, direct evidence of such intent not to honor a promise at the time it is made is usually not available. Therefore, you may determine whether Defendants had a fraudulent intent not to honor their promise based on the totality of the circumstances that bear on Defendants' promise. This would include both events occurring at the time of the promise as well as conduct and events that occurred afterward. You may consider the Defendants' subsequent conduct in order to determine what their state of mind was at the time the promise was made. Furthermore, if you find that, subsequent to making the promise to Plaintiff, Defendants violated that agreement in an extensive way, such a finding would by itself be a proper basis for you to conclude that Defendants had a fraudulent intent not to honor their promise at the time it was made.

Hoffman v. Optima Systems, Inc., 683 F.Supp. 865, 868 (D.Mass. 1988); Williamson v. Busconi, 87 F.3d 602, 603 (lst Cir. 1996.

## PLAINTIFF'S JURY INSTRUCTION NO. 24

If you find that Plaintiff has proved by a fair preponderance of the credible evidence the five elements of fraud as I explained them earlier, then you must go on and determine the amount of money damages to be awarded to the Plaintiff. By instructing you on damages, I am not suggesting how you should decide this case; I am only informing you what the law is in the event that you reach the issue of damages.

13

In a case where there has been an intentional or reckless misrepresentation, the law

provides that the Plaintiff may recover the benefit of what it was promised by the Defendants.

Thus, if you reach the issue of damages, you should award the Plaintiff a sufficient amount of

money to put it in the position that it would have been in if the situation had been as represented

by the Defendants.  In other words, if you reach the issue of damages, the Plaintiff is entitled to

recover damages sufficient to give it the benefit of the bargain with the Defendants if those

damages are proved with reasonable certainty.  In this case, the benefit of the bargain that

Plaintiff expected are the employment compensation and benefits as set forth in contract.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §20.1.8; Rice v. Price, 340
Mass. 502, 508 (1960); Restatement (Second) of Torts, §549.


**PLAINTIFF'S JURY INSTRUCTION NO. 25**

In addition, if the misrepresentation caused the Plaintiff to incur any additional expenses

that were reasonably foreseeable as a result of the Defendants's misrepresentations, then you are

to award the Plaintiff an additional amount of money that will compensate her for those

additional expenses that she incurred.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §20.1.8; Anzalone v. Strand,
14 Mass. App. Ct. 45, 49 (1982).

**PLAINTIFF'S JURY INSTRUCTION NO. 26**

I previously instructed you about Plaintiff's claim for fraudulent or intentional

misrepresentation based on misrepresentations she claims Defendants made about her

employment compensation and benefits.  In addition, Plaintiff has claimed that Defendants

negligently or innocently made the misrepresentations I described to you earlier.  Plaintiff makes

this claim as alternatives to her claim for fraudulent misrepresentation.  That is, Plaintiff claims

14

that, even if you find that Defendants did not knowingly make false statements to Plaintiff, they did in fact make those statements negligently or innocently without determining whether the statements were true or false. As a result of these misrepresentations of fact, Plaintiff entered into the contract, relocated from Maine to Massachusetts, did not personally fund any type of SEP while employed by Defendants, elected not to be covered under Defendants's health insurance policy, and used her own funds to pay for work-related expenses; all of which proximately resulted in loss and injury to Plaintiff. Plaintiff asserts she would not have done these things if she had known the true state of affairs.

The Plaintiff may recover money damages from the Defendants if she proves the following by a fair preponderance of the credible evidence:

1.    that the Defendants made a false statements to the Plaintiff, and those statements concerned facts that a reasonable person would consider important to the decisions that the Plaintiff made;

2.    that when the Defendants made the statements, the Defendants negligently failed to determine whether they were true or false. The Defendants acted negligently or innocently misrepresented if they made statements about important facts without using the amount of care a reasonable person would use in those circumstances to see that what they said was true and/or the facts about which they misrepresented were susceptible of actual knowledge;

3.    that the Defendants made the false statements with the intention that the Plaintiff would rely on those statements in making her decisions;

4.    that in making the Plaintiff's decisions, the Plaintiff did in fact rely on the Defendants' statements as true, and that her reliance was reasonable under the circumstances; and

5.    that the Plaintiff suffered some financial loss as a result of relying on the Defendant's false statements.

If the Plaintiff has proved these five things by a preponderance of the credible evidence, your verdict will be for the Plaintiff, and you must then go on to determine the amount of money

15

damages to be awarded to the Plaintiff.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §20.2; Restatement (second) of Torts, § 525 (1977); Lawton v. Dracousis, 14 Mass.App.Ct. 164 (1982); N.E. Found. Co. v. Elliott A. Watrous, Inc., 306 Mass. 177,183 (1940).

**PLAINTIFF'S JURY INSTRUCTION NO. 27**

If the Defendants did negligently or innocently misrepresent important facts with the

intention that the Plaintiff would rely upon them, and the Plaintiff did rely and suffered a

financial loss, then you are to award the Plaintiff an amount of money that will compensate her

for any expenses that Plaintiff incurred that were reasonably foreseeable as a result of

Defendants' negligence.

Brady, et al., Massachusetts Superior Court Civil Jury Instructions, §20.2.1; Restatement (second) of Torts, § 552B(1) (1977); Danca v. Taunton Savings Bank, 385 Mass. 1, 8-10 (1982); Anzalone v. Strand, 14 Mass. App. Ct. 45, 49 (1982).

> CYNTHIA FOSS BOWMAN,
> By her attorneys,
>
>
> /s/ Vincent Pisegna
>
>
> _____
> Vincent J. Pisegna  BBO# 400560
> Allison Huppé BBO#  648274
> KROKIDAS & BLUESTEIN LLP
> 600 Atlantic Avenue
> Boston, MA  02210
> (617) 482-7211

DATED:  June 8, 2006

2129\0001\170552.1

16

## CERTIFICATE OF SERVICE

I, Vincent J. Pisegna, hereby certify that on June 8, 2006, I caused to be served a true and accurate copy of the foregoing document, via first class mail, postage prepaid, upon Tamsin R. Kaplan, Esq., Tamsin R. Kaplan & Associates, P.C., 90 Concord Avenue, Belmont, MA  02478.


/s/ Vincent Pisegna
_____
Vincent J. Pisegna

2129\0001\170552.1

17